## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

KESS TANI,                                          :
                                                   :
                    Plaintiff,                     :
                                                   :
          v.                                        :          Civ. No. 10-860-LPS
                                                   :
FPL/NEXT ERA ENERGY (FPL Capital                   :
Group, Inc.), et al.,                              :
                                                   :
                    Defendants.                    :

Kess Tani, North East, Maryland, Pro Se Plaintiff.

Ramy E. Hanna, Esquire, Morgan Lewis & Bockins LLP, Wilmington, Delaware.  Counsel for Florida Power and Light.

Laurence V. Cronin, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware. Counsel for Guidant Group, Inc. Defendants.

Keri Lynn Morris, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware.  Counsel for Defendants Myriad Technical Services Corp. and Mirih Dash.

## <u>MEMORANDUM OPINION</u>

September 15, 2011
Wilmington, Delaware

STARK, U.S. District Judge:

## I.   INTRODUCTION

Plaintiff Kess Tani ("Plaintiff"), who proceeds pro se, filed this civil action raising

numerous claims, including employment discrimination and supplemental State claims.[1]  (D.I. 1)

Presently before the Court are Plaintiff's Requests for Default as to Defendants Florida Power

and Light (FPL), a/k/a NextEraEnergy, and Myriad Technical Service Corp. ("Myriad Corp."),

opposed by Myriad Corp. and Mirih Dash ("Dash")[2] (together "Myriad") as well as by Florida

Power and Light, and Plaintiff's Motion for Default Judgment against Defendant Florida Power

and Light (FPL), a/k/a NextEraEnergy, a/k/a FPL Group Capital, Inc.[3]  (D.I. 10, 22, 27)  Also

before the Court is Myriad's Motion to Dismiss and/or for Summary Judgment, and Defendant

Guidant Group, Inc.'s ("Guidant")[4] Motion to Dismiss.  (D.I. 11, 15)  In response to Defendants'

motions, Plaintiff filed a Motion to Strike Guidant's Motion to Dismiss and a Motion for

Criminal Referral of Defendants to the F.B.I. and U.S. Attorney's Office.  (D.I. 19, 25)  Finally,

Florida Power and Light has entered a special appearance and filed a Motion to Dismiss, opposed

by Plaintiff.  (D.I. 27, 28, 29, 30)

---

[1]Exhibits submitted with the Complaint have redacted information, including names of individuals.  Plaintiff indicates that Defendants redacted the information.  (*See* D.I. 14 at 10)

[2]It does not appear from the court docket that Dash has been served.

[3]Defendant FPL/NextEraEnergy (FPL Capital Group, Inc.) is discussed in the Background Section of this Memorandum Opinion.

[4]Plaintiff has named six Guidant Defendants that include the corporation itself, its chairman, CEO, CFO, president(s), and board of directors.  The Court will refer to the Guidant Defendants, collectively, as Guidant.

1

## II.   **BACKGROUND**

The Complaint raises issues regarding an employment contract entered into by Plaintiff

and the subsequent termination of his employment.  The Court notes that there is confusion

regarding the name of one defendant.  Plaintiff names as a defendant FPL/NextEraEnergy (FPL

Capital Group, Inc.).  Florida Power and Light advises the Court that there is no corporate entity

by the name of FPL/NextEraEnergy (FPL Capital Group, Inc.).  For clarity, the Court will refer to

Defendant FPL/NextEraEnergy (FPL Capital Group, Inc.) as "FPL/NextEraEnergy" and Florida

Power and Light as "FPL".[5]  Plaintiff seeks entry of default against FPL, a/k/a NextEraEnergy,

and default judgment against FPL, a/k/a NextEraEnergy, a/k/a FPL Group Capital, Inc.  The

individual entities FPL, NextEraEnergy, and FPL Group Capital, Inc. are not named defendants.

It seems that Plaintiff has combined these names to form the name for Defendant

FPL/NextEraEnergy (FPL Capital Group, Inc.).

In one paragraph of the Complaint, Plaintiff describes FPL/NextEraEnergy, Guidant, and

Myriad as owners of nuclear, fossil fuel, and renewable power plants, and sellers of electrical

power.  (D.I. 1 at ¶ 22)  In a different paragraph of the Complaint, only FPL/NextEraEnergy is

described as an owner of nuclear, fossil fuel, and renewable power plants, and seller of electrical

power.  (*Id.* at ¶ 29)  Guidant is described as a financial services firm and headhunter/body shop

that performs head-hunting for corporations across the United States and overseas.  (*Id.* at ¶ 29)

---

[5]According to the FPL web-site, Florida Power & Light Company is the largest electric
utility in Florida and is a subsidiary of  NextEra Energy, Inc. whose corporate address is 700
Universe Blvd., Juno Beach, Florida.  *See* http://www.fpl.com/about/profile/company_profile.
shtml.

Similarly, Myriad is described as a headhunter/body shop that performs head-hunting for corporations across the United States and overseas. (*Id.* at ¶ 31)

Plaintiff alleges that in April 2010, he entered into an open-ended written and verbal contract with Defendants to perform work for FPL/NextEraEnergy in Palo, Iowa, for a period of not less than thirty-six (36) months. On May 14, 2010, Defendants verbally instructed Plaintiff to travel from North East, Maryland to Palo, Iowa, and told Plaintiff that all background investigations had been completed, and the contract was valid for him to begin work. Plaintiff arrived in Palo, Iowa, was processed, and was issued an access badge/photo ID.[6] At work on May 19, 2010, Plaintiff discovered deficiencies at the nuclear power plant and reported them to his immediate supervisor. On the same date, an unidentified individual sent an email inquiring if Plaintiff was on the "no fly"or "watch list" due to an incident that happened in Maryland. (D.I. 1 at ex. 3) An unidentified individual responded that the office was unaware of "any open-ended process to determine if someone is on the no fly list." (*Id.*)

On May 24 or 25, 2010, Plaintiff took, and passed, a general employee test, fitness for duty test, and psychological test. On May 25, 2010, Defendants required Plaintiff to produce pre-employment medical records from age eighteen through the present, as a condition of performing his contract with FPL/NextEraEnergy. On May 25, 2010, Plaintiff advised Defendants that the new demand was discriminatory because white employees were not required to produce medical records from age eighteen to the present as a condition of employment. He

---

[6]An Access Authorization Review attached to the Complaint, dated May 14, 2010, provides an interim recommendation to "grant/continue access." (D.I. 1 at ex. 1) The form states "NAME: Tani, Kess; COMPANY: AB&K Technologies; STATUS: Pre Access."

notes that the demand for records is not found in the contract or FPL/NextEraEnergy employment policies.[7]

On May 25, 2010, Defendants terminated Plaintiff's contract "on the spot." According to Plaintiff, the decision to terminate his employment was due to his refusal to provide pre-employment medical records and not the result of job performance issues or violations of federal and state laws or company policies. In addition, Plaintiff alleges he engaged in protected whistle blowing activities and was subjected to racial profiling and discrimination.

The Complaint contains fourteen counts, as follows: (1) civil and criminal fraud in the inducement, misrepresentation, misstatements, and interference with a valid contract, in violation of the Statute of Frauds, U.C.C. Article 2, U.S.C. § 2000e, 42 U.S.C. § 12101, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution;[8] (2) unlawful demand for lawfully protected pre-employment medical records, in violation of 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C. § 5851, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; (3) civil and criminal conspiracy to blacklist/libel, in violation of 18 U.S.C. §§ 241 and 371, 42 U.S.C. § 1985, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; (4) civil and criminal blacklisting/libel, in violation of Title VII of the

---

[7]A NEXTERA Energy email dated May 24, 2010, from an unknown individual states that, following a conference call, it was agreed Plaintiff needed to sign a release of information for medical/mental health records for Plaintiff's eight month hospitalization in 2006-2007. (D.I. 1 at ex. 4) A reply dated May 24, 2010 states, "[Plaintiff] said he will not release the records. He has given you enough information to work with." (*Id.*)

[8]The Complaint contains partial citations. The Court duplicates the citations as set forth in the Complaint without attempting to guess the complete citations. Many of the statutes Plaintiff relies upon, however, do not support the causes of action set forth in the Complaint.

Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C. § 5851, and

the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution;

(5) termination without good cause, in violation of 42 U.S.C § 12101, Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 242m, Pub. Law 104-191 §§ 261, 265, 45 C.F.R. §§ 160-164,

and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution;

(6) intentional civil and criminal racial profiling and discrimination, in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C. § 5851,

and the Fourth, Fifth, Sixth, and Fourteenth Amendment of the United States Constitution;

(7) unlawful, unilateral and arbitrary interference and breach of contract, in violation of the

Statute of Frauds, U.C.C. Article 2, U.S.C. § 2000e, and the Fourth, Fifth, Sixth, and Fourteenth

Amendments of the United States Constitution; (8) intentional civil and criminal violations of

privacy rights, in violation of 42 U.S.C. § 2000e, and the Fourth, Fifth, Sixth, and Fourteenth

Amendments of the United States Constitution; (9) deprivation of rights, in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C. § 5851,

and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution;

(10) civil and criminal use of the internet, mail, and wire to perpetrate fraud, in violation of 18

U.S.C. §§ 1341 and 1343, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the

United States Constitution; (11) reckless disregard for the truth, life, reputation, and standing in

the nuclear industry, in violation of the Statute of Frauds, U.C.C. Article 2, U.S.C. § 2000e, 42

U.S.C. § 12101, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States

Constitution; (12) infliction of emotional and mental distress, in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C. § 5851, and

the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; (13) civil

and criminal obstruction of justice, in violation of 18 U.S.C. § 1514A, FCRA, FACTA, Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C. § 5851,

and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; and

(14) civil and criminal harm to reputation, in violation of 18 U.S.C. § 1514A, FCRA, FACTA,

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1982, 10 C.F.R. 50.7, 42 U.S.C.

§ 5851, and the Fourth, Fifth, Sixth, and Fourteenth amendments of the United States

Constitution.  Plaintiff seeks injunctive relief and compensatory and punitive damages.

## III.   **REQUEST FOR DEFAULT**

Plaintiff states that FPL, a/k/a NextEraEnergy, and Myriad were duly, effectively, and

properly served on October 22, 2010, and November 8, 2010, respectively.  (D.I. 9, 10)  Plaintiff

had sought the services of the CT Corporation, located in Wilmington, Delaware, to effect

service upon FPL/NextEraEnergy.  However it advised Plaintiff that FPL/NextEraEnergy is not

listed on its records or on the records of the State of Delaware.  (D.I. 5)

To support his claim of proper service, Plaintiff filed domestic return receipts for Myriad

Technical Services Corp. in Naperville, Illinois, and for Guidant Group, Inc. in Houston, Texas.

(D.I. 9 at ex. 5)  He also submitted Plaintiff's Exhibit 6, which is a United States Postal Service

"Track/Confirm – Intranet Item Inquiry," indicating that an item was delivered on November 8,

2010.  Exhibit 6 does not indicate to whom the item was delivered, contains an illegible

signature, and lists only one line of the street address: "700 Universe Blvd."  (D.I. 9 at ex. 6)

According to Plaintiff, this document indicates service upon FPL/NextEraEnergy, whose last

known address is 700 Universe Blvd., Juno Beach, Florida.  (D.I. 9)

6

Counsel for Myriad entered an appearance on December 8, 2010, and on December 15, 2010 moved for time to answer or otherwise plead. (D.I. 6, 8) The next day, Plaintiff requested entry of default and, on January 31, 2011, moved for default judgment against FPL, a/k/a NextEraEnergy, a/k/a FPL Group Capital, Inc., and Myriad. (D.I. 10, 22) In the meantime, the Court granted Myriad's Motion for an Extension of Time and Myriad filed a Motion to Dismiss. (D.I. 11, 13) FPL has since filed a Motion to Dismiss for lack of personal jurisdiction. (D.I. 27, 28) In its motion, FPL also contends that it was not properly served.

Entry of default judgment is a two-step process. *See* Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the Clerk of the Court "enter . . . the default" of the party that has not answered the pleading or "otherwise defend[ed]" within the time required by the rules or as extended by court order. Fed. R. Civ. P. 55(a). Timely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b) precludes entry of default. *See Francis v. Joint Force Headquarters Nat'l Guard*, 2006 WL 2711459, at *3 (D.N.J. Sept. 19, 2006), *vacated in part on other grounds by* 247 Fed. Appx. 387 (3d Cir. Sept. 7, 2007) (not published). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

The Court will deny Plaintiff's requests to enter default. (D.I. 10) Myriad sought an extension of time to answer or otherwise plead, and its request was granted by the Court. Based upon the pleadings, FPL presumes that Plaintiff intended to name it as a defendant rather than FPL/NextEraEnergy inasmuch as the latter entity does not exist, and it has filed a motion to dismiss for lack of personal jurisdiction. It is far from clear that Plaintiff has effected proper

7

service upon any defendant he associates with FPL.  Accordingly, the Court finds that entry of

default against Myriad is not appropriate under said circumstances and, for the reasons discussed

below, the motion for default is moot as to FPL.  *See Koth v. Southern Christian Univ.*, 494 F.

Supp. 2d 273, 275 n.3 (D. Del. 2007) (citing *Zelson v. Thomforde*, 412 F.2d 56 (3d Cir. 1969))

(stating if service of process is insufficient to confer personal jurisdiction, a defendant does not

waive this defense by failing to raise it in a motion or pleading within the time required for

answer, since court has no power over such defendant.).  The motion for entry of default

judgment will be denied.  (D.I. 22)

## IV.  MOTIONS TO DISMISS

### A.  Standard of Review Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks

personal jurisdiction over the defendant.  Determining the existence of personal jurisdiction

pursuant to a long-arm statute requires a two-part analysis.  First, the Court analyzes the long-arm

statute of the state in which the Court is located.  *See Intel Corp. v. Broadcom Corp.*, 167 F.

Supp. 2d 692, 700 (D. Del. 2001).  Next, the Court determines whether exercising jurisdiction

over the defendant in the state comports with the Due Process Clause of the Constitution.  *See id.*

Due Process is satisfied if the Court finds the existence of "minimum contacts" between the non-

resident defendant and the forum state, "such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of

establishing, by a preponderance of the evidence and with reasonable particularity, the existence

of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See*

*Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987);

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this

burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule

12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share,* 735

F.2d at 67 n.9; *see also Philips Electronics N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at

*3 (D. Del. Mar. 11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by

establishing jurisdictional facts through sworn affidavits or other competent evidence.").

### B.      Rule 12(b)(2) Dismissal

FPL moves for dismissal for lack of personal jurisdiction. FPL argues that, because it

cannot be served by certified mail and it lacks sufficient minimum contacts to the State of

Delaware, it is not subject to either the specific or general jurisdiction of this Court. Plaintiff

responds that FPL lies, misleads, and misstates its Delaware corporate registration and that FPL

has minimum contacts with Delaware. He further argues that summary judgment and dismissal

pursuant to Rule 12(b)(6) are not appropriate.[9]

FPL states that there is no corporate entity named FPL/NextEraEnergy as named by

Plaintiff in the Complaint. (D.I. 1 at ¶¶ 22, 23, 29 and page 9) As previously discussed, FPL

presumes that Plaintiff intended to name it as a defendant. Attached to its motion is the

declaration of J.E. Leon ("Leon"), the managing attorney, assistant secretary, and registered agent

for FPL. The declaration states that FPL: (1) is a Florida corporation organized under the laws of

---

[9]FPL does not move for dismissal pursuant to Rule 12(b)(6). Nor does it move for
summary judgment.

the State of Florida; (2) does not maintain an office or other place of business in Delaware; (3) is

not licensed to do business in Delaware; (4) does not have an agent for service of process in

Delaware; (5) does not have a telephone number or bank account in Delaware; (6) does not have

any employees or agents in Delaware; and (7) does not contract to supply services or things in

Delaware. (D.I. 28 at Leon Decl.)  To refute this declaration, Plaintiff submitted the following:

(1) a registration statement under the Securities Act of 1933 listing several companies including

FPL Group, Inc. and FPL Group Capital, Inc., with Florida next to their names, and the

companies Florida Power & Light Company, FPL Group Trust I and II, as well as FPL Group

Capital Trust I and II, with Delaware next to their names; (2) jobs in Delaware offered by Army

National Guard; (3) "entity details" from the Delaware Division of Corporations, with the

notation "this is not a statement of good standing" for the statutory trusts Florida Power & Light

Company Trust I, Florida Power & Light Company Trust II, and the corporations Nextera Energy

Inc., NextEra Energy Capital, Inc., and NextEra Energy Capital Holdings, Inc.  (D.I. 29)

FPL correctly notes that Plaintiff provided no documents or records to evidence the

existence of the entity he sued, FPL/NextEraEnergy.  It argues that the information for the

Delaware statutory trusts is irrelevant because there are no allegations that Plaintiff was

employed by a statutory trust nor were there any attempts to serve the statutory trusts.  FPL

indicates that the Delaware corporation NextEra Energy, Inc., formed in Delaware in 2008, was

dissolved on May 28, 2010, and the Delaware corporation NextEra Energy Capital, Inc. was

dissolved in Delaware on October 21, 2010 and in Florida on May 3, 2010.[10]  Finally, FPL

---

[10]Delaware law provides for a three-year window during which suits can be brought
against a dissolved corporation. *See* 8 Del. C. § 278.

10

advises that there are Florida corporations named NextEra Energy, Inc. and NextEra Capital

Holdings, Inc., and further that NextEra Capital Holdings, Inc. is inactive in Delaware.

The first step to determining whether the Court has personal jurisdiction over FPL is to

examine the sufficiency of service under Delaware's long-arm statute.[11]  Sections 3104(c)(1)-(3),

(5), and (6) provide for specific jurisdiction, while § 3104(c)(4) provides for general jurisdiction.

*See Padcom, Inc. v. NetMotion Wireless, Inc.*, 2004 WL 1192641, at *4 (D. Del. May 24, 2004).

Specific jurisdiction arises when a defendant has both purposefully directed its activities at

residents of the forum state and the action arises from, or is directly related to, the defendant's

actions within the forum state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

---

[11]Under Delaware's long-arm statute, the Court may exercise jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

> (1) transacts any business or performs any character of work or service in the State;

> (2) contracts to supply services or things in this State;

> (3) causes tortious injury in the State by an act or omission in this State;

> (4) causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

> (5) has an interest in, uses or possesses real property in the State; or

> (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c).

General jurisdiction may be exercised over a defendant whose contacts with the forum state are "continuous and substantial." *See Merck & Co., Inc. v. Barr Laboratories, Inc.*, 179 F. Supp. 2d 368, 374 (D. Del. 2002). The standard for contacts with a forum state to be considered "continuous and substantial" is a "high standard in practice." *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1304 (D. Del. 1990). "Typically, before consideration for general jurisdiction, the defendant must be engaged in longstanding business in the forum state such as marketing or shipping products, or performing services or maintaining one or more offices there – activities that are less extensive than that will not qualify for general in personam jurisdiction." *Kloth v. Southern Christian Univ.*, 494 F. Supp. 2d 273, 280 (D. Del. 2007).

FPL is not incorporated or organized under Delaware law, maintains no office or other place of business in Delaware, is not licensed to do business in Delaware, does not have an agent for service of process in Delaware, does not have a telephone number or bank account in Delaware, does not have any employees or agents in Delaware, and does not contract to supply services or things in Delaware. Nor does the Complaint allege Plaintiff's injury occurred as a result of acts that took place in Delaware. In short, none of the sections under Delaware's long-arm statute provide justification for service upon FPL. Notably, Plaintiff has failed to come forward with evidence to show that his cause of action arises from FPL's conduct within Delaware or that FPL regularly and continuously conducted business within Delaware. Thus, this Court has neither specific nor general jurisdiction over FPL, and the Delaware long-arm statute cannot lawfully be used as a basis to serve FPL.[12] To the extent that Plaintiff intended to

---

[12]The Court need not consider whether the exercise of personal jurisdiction would be consistent with FPL's constitutional rights to due process. *See Kloth*, 494 F. Supp. 2d at 281 n.8.

bring this action against FPL, rather than FPL/NextEraEnergy, the Court will grant FPL's Motion to Dismiss.

However, because Plaintiff proceeds pro se and seemingly has named the wrong corporate defendant, the Court, in its discretion pursuant to Fed. R. Civ. P. 15(a), will allow Plaintiff to correct his misnomer by amending his Complaint to name the correct corporate defendant that may be related or affiliated with FPL or a NextEraEnergy company. Allowing Plaintiff to amend under Rule 15(a) will serve the interests of justice. *See Foman v. Davis* 371 U.S. 178, 182 (1962). By permitting amendment, however, the Court is not determining at this time whether it would have personal jurisdiction over some other related or affiliated FPL entity.

C.      **Standard of Review Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* __U.S. __, 129 S.Ct. 1937, 1949 (2009). A plaintiff is required, by Fed. R. Civ. P. 8(a)(2), to provide the "grounds of his entitle[ment] to relief[, which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotation marks omitted). Because Plaintiff proceeds pro se, his pleading is

liberally construed, and his Complaint, "however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89,

94 (2007) (internal quotation marks omitted).

The Third Circuit has explained:

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts
> generally consider only the allegations in the complaint, exhibits
> attached to the complaint, matters of public record, and documents
> that form the basis of a claim.  A document forms the basis of a
> claim if the document is integral to or explicitly relied upon in the
> complaint.  The purpose of this rule is to avoid the situation where
> a plaintiff with a legally deficient claim that is based on a particular
> document can avoid dismissal of that claim by failing to attach the
> relied upon document.  Further, considering such a document is not
> unfair to a plaintiff because, by relying on the document, the
> plaintiff is on notice that the document will be considered.

*Lum v. Bank of Am.*, 361 F.3d 217 n.3 (3d Cir. 2004) (internal citations and quotation marks

omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Myriad moves for dismissal on the grounds that: (1) the allegations fail to assert any

legally cognizable claim; (2) the broad and repetitive allegations are that all Defendants have

taken the same actions against Plaintiff; (3) there are no specific claims of wrongdoing by

Myriad; and (4) the exhibits attached to the Complaint do not suggest any wrongdoing by

Myriad.[13]

Guidant moves for dismissal on the grounds that: (1) Plaintiff fails to allege facts to

support an employment discrimination claim, in that an employer is not identified, the nuclear

regulations relied upon by Plaintiff justified his termination, there is no individual liability for

---

[13]Myriad moves for summary judgment in the alternative.  The Court does not consider
the summary judgment motion at this stage of the proceeding.

discrimination claims under Title VII and the ADA, Plaintiff failed to exhaust his administrative

remedies, and Plaintiff denies that he is an employee; (2) the Complaint fails to allege facts to

support a fraud claim; (3) the breach of contract claim lacks factual support; (4) the Complaint

fails to allege facts to support a defamation claim; (5) the claims for criminal and constitutional

violations are legally unsupportable; and (6) service on the individual Guidant defendants was

improper and, therefore, ineffective.

### D.    Rule 12(b)(6) Dismissal

#### 1.    Failure to State a Claim

Myriad and Guidant move for dismissal for failure to state a claim upon which relief may

be granted.  Plaintiff invokes 42 U.S.C. § 2000e and 42 U.S.C. § 12101, statutes that prohibit

employment discrimination by reason of race and disability.

Title VII and the ADA regulate the relationship between employers and employees.  As a

result, in Title VII and ADA cases, the relevant question is whether Defendants were Plaintiff's

employers under the statutes and whether Plaintiff was their employee.[14]  In the Complaint,

Plaintiff refers to himself as an employee, but in his opposition to Myriad's motion, he refers to

himself as an independent contractor.  (*See* D.I. 14)  Title VII and the ADA do not cover

independent contractors. *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179-81 (3d Cir. 2009);

*Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998); *Birchem v. Knights*

*of Columbus*, 116 F.3d 310, 312 (8th Cir. 1997) (stating ADA does not encompass independent

---

[14]Plaintiff's opposition to Guidant's Motion to Dismiss contains an exhibit with a
"Guidant" heading.  (D.I. 19 at ex. 10)  The exhibit is a timesheet for the week ending May 23,
2010 for "Associate Tess, Kani," whose job title is nuclear project manager.  The "Staffing
Partner" is identified as Myriad Technical Services Corp. and the "Supervisor Client" is
identified as NextEra Energy Resources.  (*Id.*)

contractors). Title VII authorizes a cause of action only against employers, employment

agencies, labor organizations, and training programs, *see* 42 U.S.C. § 2000e-2, just as the ADA

covers only employers, employment agencies, and labor organizations, *see* 42 U.S.C. § 12111(2).

In addition, the Complaint does not contain the basic elements of termination of

employment based upon race or disability discrimination. In order to state a prima facie case of

employment discrimination, a plaintiff must allege: (1) that he is a member of a protected class;

(2) that he is qualified for the position; (3) that he suffered an adverse employment action; and

(4) that the circumstances of the case give rise to an inference of unlawful discrimination. *See*

*Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999). Similarly, in order to

make out a prima facie case under the ADA, a plaintiff must show that he: (1) has a disability;

(2) is a qualified individual; and (3) has suffered an adverse employment action because of that

disability. *See Robinson v. Lockheed Martin Corp.*, 212 F. App'x 121, 123 (3d Cir. Jan. 8, 2007)

(not published).

While not required to prove the elements of discrimination at the pleading stage, a

plaintiff must plead facts that "raise a reasonable expectation that discovery will reveal evidence

of the necessary element[s]." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009).

Plaintiff has not done so. Therefore, his discrimination claims must be dismissed.

Moreover, Plaintiff alleges in a conclusory manner, without supporting facts, that he was

terminated based upon race and an unspecified disability. The wholly conclusory statements do

not allege any underlying factual matter. Without some factual basis, such allegations are not

entitled to the presumption of truth. These bare allegations do not plausibly suggest that Plaintiff

is entitled to relief and are insufficient under Rule 8(a) to state a claim upon which relief can be

16

granted. *See Twombly*, 550 U.S. at 564.

For the above reasons, the Court will grant the Motions to Dismiss the employment discrimination claims, but will give Plaintiff leave to amend the Title VII race discrimination claim, as the facts suggest that he may be able to state a claim. While the Complaint makes no mention of any disability, as required for an ADA claim, the Complaint refers to Plaintiff's lengthy hospitalization, which suggests that he may be able to state a claim under the ADA. Plaintiff will also be given leave to amend the ADA claim. "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d. Cir 2008).

### 2. **Individual Defendants**

Guidant moves for dismissal of the discrimination claims raised against the individual defendants. The Complaint names a number of individual defendants. To the extent Plaintiff raises Title VII and ADA claims against these individuals, these claims cannot stand, as individuals cannot be held liable under Title VII or the ADA. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996) (en banc) (individual employees are not liable under Title VII); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA").

Accordingly, the Court will grant Guidant's motion to dismiss the Title VII and ADA claims raised against the individual Defendants.

### 3. **Exhaustion of Administrative Remedies**

Defendants move to dismiss the Title VII and ADA claims for Plaintiff's failure to

17

exhaust administrative remedies.  Plaintiff responds that he is an independent contractor and,

therefore, he is not subject to exhaustion of administrative remedies.

A plaintiff may not file a Title VII or ADA suit in federal court without first exhausting

avenues for redress at the administrative level, pursuant to 42 U.S.C. § 2000e-16(c).  *See Francis*

*v. Mineta*, 505 F.3d 266, 272 (3d Cir. 2007); *Doe v. Winter*, 2007 WL 1074206 (E.D. Pa. Apr. 5,

2007).  This prerequisite, akin to a statute of limitations, mandates dismissal of the Title VII or

ADA claim if a plaintiff files the claim before receiving a right to sue notice.  *See Story v.*

*Mechling*, 214 F. App'x 161, 163 (3d Cir. Jan. 19, 2007) (not published) (plaintiff may not

proceed with Title VII claim because he neither received a right to sue letter nor submitted

evidence indicating that he requested a right to sue letter); *Burgh v. Borough Council of Borough*

*of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).  Without first affording the EEOC an opportunity

to review and conciliate the dispute, a plaintiff may not seek relief in federal court for his Title

VII claim.  *See Burgh*, 251 F.3d at 470.

The Complaint does not allege that Plaintiff exhausted his administrative remedies, nor

was a right-to-sue letter submitted with the Complaint.  Rather, Plaintiff opposes the motion on

the ground that, as an independent contractor, he is not required to exhaust administrative

remedies.  This is not a meritorious position.  For the above reasons, the Court will grant the

Motions to Dismiss the Title VII and ADA claims for failure to exhaust administrative remedies.

As previously discussed, however, Plaintiff will be given leave to amend the Title VII and ADA

claims to cure his pleading deficiencies.

### 4.    42 U.S.C. § 1981 and § 1982

Several counts in the Complaint allege violations of 42 U.S.C. § 1981 and § 1982.  The

18

requisite elements of claims under §§ 1981 and 1982 are similar, but not identical. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

Section § 1981 forbids discrimination on the basis of race in the making of public and private contracts. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987). To state a claim under § 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts" *Id.*

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Under § 1982, a plaintiff "must allege with specificity facts sufficient to show or raise a plausible inference of (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race." *Philip Morris Inc.*, 250 F.3d at 797.

The allegations in the Complaint fail to state a claim. As previously discussed, the allegations are not directed to any individual Defendant. The allegations that "Defendants" required Plaintiff to provide medical records when white employees were not so required do not apprise each Defendant of his or its alleged discriminatory acts. Also, § 1982 is inapplicable to the allegations in the Complaint.

In short, no matter how liberally the Complaint is construed, Plaintiff has failed to state a claim under §§ 1981 and 1982. Accordingly, the Court will dismiss the claims raised pursuant to § 1981 and § 1982. Plaintiff will be given leave to amend the § 1981 claim to correct his

19

pleading deficiencies.  Any amendment of the § 1982 claim would be futile.

     **5.**     **42 U.S.C. § 5851**

The Complaint references 42 U.S.C § 5851 in several counts.  This statute refers to the

Energy Reorganization Act ("ERA"), which prohibits discrimination against an employee based

on the employee's whistleblower actions in notifying the employer or other authorities about

unlawful practices.  *See* 42 U.S.C. § 5851(a).  To state a prima face case under the ERA, an

employee must show: "(1) the employer is covered by the act, (2) the employee engaged in

protected activity, (3) the employee suffered adverse action, and (4) there is an inference of

causation between the protected activity and the adverse action.  Proximity in time is sufficient to

raise an inference of causation."  *Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 934

(11th Cir. 1995); *see Muino v. United States Dep't of Labor*, 325 F. App'x 791 (11th Cir. Apr. 28,

2009) (not published).

The ERA outlines the procedures for filing a complaint, as follows: "Any employee who

believes that he has been discharged or otherwise discriminated against by any person in

violation of subsection (a) of this section may, within 180 days after such violation occurs, file

(or have any person file on his behalf) a complaint with the Secretary of Labor . . . alleging such

discharge or discrimination."  42 U.S.C. § 5851(b)(1).  The ERA further provides that any person

adversely affected by an order of the Secretary of Labor may obtain review in the court of appeals

for the circuit in which the violation of the ERA allegedly occurred.  *See id.* at § 5851(c)(1).

Plaintiff has alleged that he was terminated from employment within a short time after

reporting nuclear deficiencies.  The allegations raise the specter of a § 5851 violation.  However,

as already discussed, the Complaint fails to allege adequately who employed Plaintiff and

whether Defendants are Plaintiff's employers and are covered by the ERA.  In addition, the

Complaint does not indicate if Plaintiff presented his claims to the Secretary of Labor.

Accordingly, the Court will grant the Motion to Dismiss the ERA claims, but will give Plaintiff

leave to amend the claim.

        6.      **Constitutional Claims**

Guidant moves for dismissal of Plaintiff's claims that his constitutional rights were

violated by Defendants.  Plaintiff alleges violations of the Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution.

The Complaint fails to allege any facts which, if proven, would show that Defendants

were state actors or were acting under the color of state law or in conjunction with a state actor, a

prerequisite to Plaintiff's constitutional claims.  *See e.g., Skinner v. Railway Labor Executives'*

*Ass'n*, 489 U.S. 602, 614 (1989) ("[T]he Fourth Amendment does not apply to a search or

seizure, even an arbitrary one, effected by a private party on his own initiative . . . ."); *Public*

*Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (stating Fifth Amendment "appl[ies]

to and restrict[s] only the Federal Government and not private persons"); *Turner v. Rogers*,

___U.S.___, 131 S.Ct. 2507, 2516 (2011) (stating Sixth Amendment does not govern civil

cases); *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982) (explaining that Fourteenth

Amendment is directed at States, so it can be violated only by conduct that may be fairly

characterized as "state action").

Plaintiff's constitutional claims fail to state a claim upon which relief may be granted, as

there are no allegations that any of the named Defendants are State actors and the Sixth

Amendment is inapplicable to this civil case.  Accordingly, the Court will grant the Motion to

Dismiss the constitutional claims.

### 7. **Federal Criminal Statutes**

Guidant moves for dismissal of the federal criminal claims raised in the Complaint. Plaintiff raises claims pursuant to federal criminal statutes 18 U.S.C. §§ 241, 371, 1341, and 1343.

Individual citizens do not have a constitutional right to the prosecution of alleged criminals. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). The decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979). In addition, 18 U.S.C. §§ 241, 371, 1341, and 1343 do not provide for a private cause of action. *See Walthour v. Herron*, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010) (stating no private right of action exists under 18 U.S.C. §§ 241 and 371); *Jones v. Lockett*, 2009 WL 2232812, at *8 (W.D. Pa. July 23, 2009) ("It is clear that the criminal statutes invoked by Plaintiff, i.e., 18 U.S.C. §§ 241, 371, and 1341 do not provide for a private cause of action."); *Fleishman v. Sculley*, 2004 WL 2203746, at *1 (E.D. Pa. Sept. 30, 2004) (stating Plaintiff is unable to bring civil actions for wire and mail fraud under 18 U.S.C. §§ 1341 and 1343 since these are criminal statutes and provide no private right of action).

For the above reasons, the Court will grant the Motion to Dismiss the claims raised pursuant to 18 U.S.C. §§ 241, 371, 1341, and 1343.

### 8. **18 U.S.C. § 1514A**

In at least two counts, Plaintiff relies upon 18 U.S.C. § 1514A, a provision of the Sarbanes-Oxley Act, to raise claims against Defendants. The Sarbanes-Oxley Act's

22

whistleblower protection provision creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity. 18 U.S.C. § 1514A. Section 1514A(a)(1)(C) states in relevant part:

> No [publicly-traded company] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [18 U.S.C.] section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by . . . (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . .

"[A]n employee's protected communications must relate definitively and specifically to the subject matter of the particular statute under which protection is afforded." *Allen v. Administrative Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008).

To prevail on a claim under this provision, an employee must prove by a preponderance of the evidence that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *See Allen*, 514 F.3d at 475-76.

To the extent that Plaintiff raises a claim under § 1514A, the allegations are deficient. There are no allegations that Defendants are publicly traded companies. Nor are there allegations that Plaintiff engaged in protected communications. Finally, in order to bring a claim under the Sarbanes-Oxley Act, an employee must first "file a complaint with the Occupational and Health

23

Safety Administration ('OSHA') and afford OSHA the opportunity to resolve the allegations administratively." *Willis v. Vie Fin. Group, Inc.*, 2004 WL 1774575, at *6 (E.D. Pa. Aug. 6, 2004) (citing 18 U.S.C. § 1514(b)(1)(A)). There are no allegations that this occurred. The facts, however, suggest that plaintiff may be able to state a claim.

Accordingly, the Court will dismiss, sua sponte, the claim raised pursuant to 18 U.S.C. § 1514A.[15] Plaintiff will be given leave to amend the § 1514A claim to correct his pleading deficiencies.

### 9.   42 U.S.C. § 1985

The Complaint alleges conspiracy pursuant to 42 U.S.C. § 1985.[16] Presumably, Plaintiff refers to § 1985(3) since § 1985(1) and (2) are not implicated in any way in the allegations.[17] Section 1985(3) prohibits conspiracies to deprive a "person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law." The Supreme Court has interpreted the language of § 1985(3) as "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v.*

---

[15] A federal court may sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), when the allegations within the complaint "are so attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously frivolous, . . . plainly unsubstantial, . . . or no longer open to discussion." *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (internal citations and quotation marks omitted); *see Degrazia v. Federal Bureau of Investigation*, 316 F. App'x 172 (3d Cir. Mar. 12, 2009) (not published) (claims that meet *Hagan* standard properly dismissed sua sponte pursuant to Fed. R. Civ. P. 12(b)(1)).

[16] The conspiracy claim plead under Delaware law is discussed later in this Opinion.

[17] Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties. Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witness who have testified, or attempting to influence or injure grand or petit jurors.

*Rutledge*, 460 U.S. 719, 725 (1983).  It is well settled that "intent to deprive of equal protection,

or equal privileges and immunities, means that there must be some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 726.

Here, Plaintiff alleges in a conclusory manner that he was treated differently due to his

race.  However, the Complaint does not contain allegations from which one could infer an

agreement or understanding among Defendants to violate Plaintiffs' constitutional rights, or to

discriminate against him under § 1985.  The Court, therefore, will dismiss the § 1985 claim, but

will give Plaintiff leave to amend the claim.

### 10.   State Claims

#### a.   Fraud in the Inducement

Guidant moves for dismissal of the fraud in the inducement claim on the grounds that

Plaintiff fails to allege sufficient facts to support said claim.  Plaintiff alleges that he was

fraudulently induced into entering into a contract, but refers to inapplicable statutes to support his

claim.[18]

Delaware law provides for claims for fraud in the inducement.  A plaintiff must allege

with particularity the following elements: (1) a false representation of material fact; (2) the

defendant's knowledge of or belief as to the falsity of the representation or the defendant's

reckless indifference to the truth of the representation; (3) the defendant's intent to induce the

plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable

reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.  *See*

---

[18]Guidant notes that the two provisions on which Plaintiff bases his claim – U.C.C.
Article 2, which applies to the sale of goods, and U.S.C. § 2000e, which Guidant interprets to
refer to 42 U.S.C. § 2000e – do not include causes of action for fraudulent inducement.

*Stephenson v. Capano Dev. Co.*, 462 A.2d 1069, 1073 (Del. 1983); *see also DVC Holdings Inc. v. ConAgra Holding, Inc.*, 889 A.2d 954 (Del. 2005).

The Complaint fails to allege the elements of fraud in the inducement. The facts are directed to all Defendants and are specific to none. In addition, there are insufficient allegations of fact as to false misrepresentation of material fact by Defendants. Similarly, the Complaint is lacking in facts to support Defendants' knowledge of, or belief, as to the falsity of the representation or their reckless indifference to the truth of the representation. Nor does the Complaint adequately allege Defendants' intent to induce Plaintiff to act. Instead, the Complaint alleges that Plaintiff was offered employment by a non-specified Defendant, traveled to his assignment location at the request of a non-specified individual or entity and, once there, was told by a non-specified Defendant that he was required to submit medical records. When Plaintiff refused, his employment was terminated. The facts, as alleged, do not state a claim for fraud in the inducement.

Therefore, the Court will grant the Motions to Dismiss the fraud in the inducement claim. Plaintiff, however, will be given leave to amend the claim.

### b.   <u>Breach of Contract</u>

Plaintiff alleges that he entered into a contract for employment and Defendants breached the contract on May 25, 2010. A copy of the contract was not filed with Complaint. Myriad argues that Plaintiff was aware of the requirements to gain access to the site and, therefore, there was no misrepresentation. In its Motion to Dismiss, Myriad provides a copy of the personal history questionnaire Plaintiff was to complete for employment. (D.I. 11 at ex. A) The form requires Plaintiff to produce all criminal and legal records and drug/alcohol testing results since

26

his eighteenth birthday.  Guidant moves for dismissal on the grounds that the statutory provisions relied upon by Plaintiff do not support his claim and that he has failed to allege with whom he contracted and which Defendant allegedly breached the contract.  Plaintiff responds that the contract did not require him to provide pre-employment medical records.

The elements of a breach of contract claim are "the existence of a contract, the breach of an obligation imposed by that contract, and the resultant damage." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *see also Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 747-48 (Del. Ch. 2008) (stating breach of contract is intentional when defendant commits "deliberate act" that was "in and of itself a breach" of contract).  The plaintiff in a contract action must prove by a preponderance of the evidence the existence of an offer of a contract by one party; an acceptance of that offer by the other party; consideration for the offer and acceptance; and sufficiently specific terms that determine the obligation of each party.  *See Fanean v. Rite Aid Corp.*, 984 A.2d 812, 822 (Del. Super. Ct. 2009).

It is not clear from the allegations with whom Plaintiff contracted or which Defendant or Defendants allegedly breached the contract.  Also, it is not clear from the allegations whether the term at issue (i.e., production of medical records) was a term of the contract.  Because the claim is deficiently pled, the Court will grant Defendants' Motions to Dismiss the claim.  Plaintiff will be given leave to amend the claim.

### c.    **Defamation/Libel Blacklisting**

Plaintiff appears to allege that he was defamed by Defendants when an unnamed Defendant or Defendants "blacklisted" or libeled him by adding him to the "critical group list and watch list of persons to be constantly watched and barred from working at any USNRC

27

Licensed Nuclear Facilities Across the U.S.A." Myriad contends dismissal is appropriate because the Complaint does not contain factual allegations to support the claim against it. Guidant moves for dismissal on the grounds that Plaintiff has failed to allege facts to support his claim. Plaintiff responds that it is evident from Exhibit 3 attached to the Complaint that he was defamed, libeled, and blacklisted by Defendants. He contends that Defendants are vicariously liable to him for their actions.

To state a defamation claim under Delaware law, a plaintiff must show: (1) defendant made an oral or written factual and defamatory statement, (2) regarding the plaintiff, (3) that is published to others by defendant, and (4) that results in injury. *See Roberts v Murray*, 2009 WL 2620725, at *5 (Del. Super. Ct. July 24, 2009). Slander generally requires proof of special damages. However four categories of slander require no such proof and, as such, are slander per se. These categories encompass statements that malign a person in a trade, business or profession, impute a crime, imply that a person has a loathsome disease, or impute unchastity to a woman. *See Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

Plaintiff interprets a statement in the communication that he "is processing at Duane Arnold,[19] and will be in the critical group" as blacklisting him, placing him on the "critical group" list to be watched, and preventing him from working at NRC licensed facilities. In reviewing Exhibit 3, it is far from clear that the statement is defamatory. In addition, the Complaint does not to identify the person or entity who allegedly defamed Plaintiff, that the communication referred to Plaintiff, that the publisher understood that the communication was

---

[19]Duane Arnold is a nuclear power unit located near Palo, Iowa. *See* http://www.fpl.com/environment/nuclear/about_duane_arnold.shtml. This appears to be the facility where Plaintiff reported for employment.

defamatory, or that Plaintiff sustained an injury.  Even if the statement could be considered defamatory, the Complaint does not identify the third parties to whom the email was published.

The claim as it now stands fails to state a claim upon which relief may be granted. Therefore, the Court will grant the motion to dismiss the defamation/libel claim.  Plaintiff will be given leave to amend the claim.

### d.   Intentional Infliction of Emotional and Mental Distress

Myriad moves for dismissal of Plaintiff's claims for infliction of emotional and mental distress on the grounds that there are no facts to suggest that Myriad was involved in the request for Plaintiff to produce the medical records at issue or that its actions would permit recovery under said theory.  Plaintiff responds that Myriad is mistaken and uninformed about an agent's liabilities to third party "independent contractors."

Delaware applies Restatement (Second) of Torts § 46 in defining the elements of intentional infliction of emotional distress, as follows: (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.  (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if such distress results in bodily harm. *See Cummings v. Pinder*, 574 A.2d 843, 845 (Del. 1990).

To the extent that the Complaint suggests a claim for intentional infliction of emotional distress, it is not supported by sufficient factual allegations.  The Complaint fails to allege facts

indicating that Defendants' conduct was extreme or outrageous, or that Plaintiff suffered emotional distress so severe as to give rise to an actionable claim. However, it is possible that Plaintiff may be able to state a claim upon amendment. Accordingly, the Court will grant Myriad's Motion to Dismiss this claim, but will give Plaintiff leave to amend.

### e.    **Civil Conspiracy**

Plaintiff appears to allege a criminal and civil conspiracy. Plaintiff's criminal claims were previously discussed.

To successfully plead a claim for civil conspiracy under Delaware law, a plaintiff must allege "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987). Each conspirator "is jointly and severally liable for the acts of co-conspirators committed in furtherance of the conspiracy." *Id.* at 150.

Although the elements of a claim for civil conspiracy are flexible, it is essential that there be an underlying wrongful act, such as a tort or a statutory violation. *See Empire Fin. Servs. v. Bank of New York (Delaware)*, 900 A.2d 92, 97 (Del. 2006). A breach of contract is not an underlying wrong that can give rise to a civil conspiracy claim. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009). While Plaintiff raises many claims, as discussed he has failed to allege properly the elements of an underlying wrong that would be actionable in the absence of a conspiracy. The Court will give Plaintiff leave to leave to amend to correct the pleading deficiencies.

For the above reasons, the Court will grant Guidant's Motion to Dismiss the civil conspiracy claims. Plaintiff will be given leave to amend this claim.

### E.   **Rule 12(b)(5) Dismissal**

Guidant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(5) on the grounds that

service upon the individual Guidant Defendants was improper and, therefore, ineffective.  More

particularly, it argues that Plaintiff's service upon "Chairman," "Board of Directors,"

"Presidents," and "Chief Executive Officer" of Guidant Group fails because said individuals do

not exist within Guidant Group, Inc. and there are no individuals who hold these positions with

Guidant.  Plaintiff responds that said individuals do exist, provides names of individuals, and

refers to press releases to support his position.[20]

Federal Rule of Civil Procedure 12(b)(5) of the Federal Rules of Civil Procedure allows a

court to dismiss an action for "insufficiency of service of process."  When Rule 12(b)(5) motion

is filed challenging sufficiency of service, "the party asserting the validity of service bears the

burden of proof on that issue."  *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d

476, 488 (3d Cir. 1993).  In addressing such motions, district courts possess broad discretion to

either dismiss the action, or retain the case but quash the service that has been made on

defendants. *See Umbenhauer v. Woog,* 969 F.2d 25, 30 (3d Cir. 1992).  However "dismissal of a

complaint is inappropriate when there exists a reasonable prospect that service may yet be

obtained.  In such instances, the district court should at most, quash service, leaving the plaintiff

[] free to effect proper service."  *Id.*

To support his position that service was properly effected on the individual Guidant

Defendants, Plaintiff refers the Court to Docket Item 9.  In Docket Item 9, Plaintiff avers that he

---

[20]Plaintiff also moves to strike Guidant's Motion to Dismiss.  (D.I. 19)  The Court will
deny this motion.

31

served process on "Defendants Guidant Group, Inc. et. al" on November 10, 2010, at Guidant's corporate headquarters in Houston, Texas. (D.I. 9)  Attached to D.I. 9 is a United States Postal Service "return receipt" for an article addressed to Guidant Group, Inc.  But nothing in the record reflects service on the unnamed corporate individuals.  Nor does the record reflect that Plaintiff served any of the individuals he identifies in his opposition.

Accordingly, the Court will grant the Motion to Dismiss the individual corporate defendants.  They will be dismissed without prejudice.[21]  It may be that Plaintiff can identify and properly serve individual Guidant corporate Defendants against whom he seeks redress.  Of course this depends, in part, on which claims are presented in an amended complaint.  Therefore, the Court will quash service on the individual Guidant corporate Defendants and give Plaintiff leave to properly identify and effect proper service upon individual Guidant Defendants following the filing of an amended complaint.

## V.    CRIMINAL REFERRAL

Plaintiff moves the Court for a criminal referral of Defendants to the F.B.I. and the United States Attorney's Office for criminal investigation and prosecution.  (D.I. 25)  Guidant opposes the motion and asserts that it violates Fed. R. Civ. P. 11 and is intended for the improper purpose of leveraging a settlement from Guidant.

If a purported criminal complaint warrants action, a court may refer it to the United States Attorney for action.  *See United States ex rel. Savage v. Arnold*, 403 F.Supp. 172, 174 (E.D. Pa. 1975); *accord Chase v. Riegel*, 2010 WL 5418915 (D.N.J. Dec. 23, 2010).  The commencement

---

[21]Dismissals under 12(b)(5) must be entered without prejudice. *See Umbenhauer*, 969 F.2d at 30 n.6.

32

of a criminal action is governed in part by Federal Rules of Criminal Procedure 3 and 4, which provide some guidance in determining whether a purported criminal complaint merits reference to the United States Attorney.  Rule 3 provides, "[t]he complaint is a written statement of the essential facts constituting the offense charged.  It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer."  Rule 4 provides, in pertinent part, "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's allegations are not sufficient to establish probable cause to believe that Defendants have violated federal criminal statutes.  The Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney or the F.B.I.  Therefore, the Court will deny the motion for referral.  (D.I. 25)

## VI.   <u>SHOW CAUSE</u>

Plaintiff filed his Complaint on October 7, 2010 and, as noted by FPL, there has been no attempt to serve Defendants Lewis Hay, III, Steve Haller, Darla Grimms or Dash.  Nor has Plaintiff identified Defendants Chairman, CEO, CFO, Presidents, Board of Director, Internet Psychologist, or Security/HR Manager.

Therefore, Plaintiff will be ordered to show cause why the foregoing Defendants should not be dismissed for failure to identify them and serve process within 120 days of filing the Complaint, pursuant to Fed. R. Civ. P. 4(m).

## VII.    CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's Request to Enter Default; (2) grant Myriad's Motion to Dismiss and deny without prejudice as premature its Motion for Summary Judgment; (3) grant Guidant's Motion to Dismiss; (4) deny Plaintiff's Motion to Strike; (5) deny Plaintiff's Request to Enter Default Judgment; (6) deny Plaintiff's Motion for Criminal Referral of Defendants to the F.B.I. and U.S. Attorney's Office; and (7) grant FPL's Motion to Dismiss.  (D.I. 10, 11, 15, 19, 22, 25, 27)  Plaintiff will be given leave to amend the following claims: Title VII race discrimination; ADA; 42 U.S.C. § 1981; 42 U.S.C. § 5851; 15 U.S.C. § 1514A; 42 U.S.C. § 1985; and supplemental claims of fraud, breach of contract, defamation, civil conspiracy, and intentional infliction of emotional and mental distress under State law.  He will also be given leave to amend to name the correct corporate defendant that may be related to or affiliated with FPL or a NextEraEnergy company.  All other claims will be dismissed with prejudice.  Plaintiff will be given leave to identify and properly serve individual Guidant Defendants upon the filing of an amended complaint.  Finally, Plaintiff will be ordered to show cause why certain Defendants have not been identified and/or served.

An appropriate Order follows.